UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DANIEL FERNANDES,
    Plaintiff,


v.                           CIVIL ACTION NO. 20-11612-GAO[1]


EDWARD BOULEY, Former Lieutenant
BRISTOL COUNTY SHERIFF'S OFFICE
JOHN MURPHY, Former Captain
MICHAEL SENA, Former Correctional Officer
THOMAS M. HODGSON, Sheriff, Bristol County
BROCK MORRIS, Former Correctional Officer
STEVEN J. SOUZA, Superintendent, Bristol County Sheriff's Department,
    Defendants.


MEMORANDUM AND ORDER ON PLAINTIFF'S
FIRST MOTION TO COMPEL DISCOVERY (#47) AND
SECOND MOTION TO COMPEL DISCOVERY (#53).

I. Introduction.

Daniel Fernandes seeks to recover for injuries sustained when he was beaten by Bristol

County Sheriff (BCSO) correctional officer Michael Sena. (#1.) Fernandes alleges that on October

24, 2017, Brock Morris, a correctional officer, and Edward Bouley, a lieutenant, were searching

Fernandes' cell when Sena abandoned his post across the building and joined them. Id. ¶¶13-16.

Video evidence shows that Morris and Bouley stood in the hallway after Sena led Fernandes into

the cell, where Sena allegedly punched Fernandes in the head, smashed his face into the wall,

kicked him in the groin, and stepped on his handcuffs. Morris and Bouley entered the cell, and

Morris allegedly told Sena: "Come on, that's enough." Id. ¶¶17-27, 81, 85, 91. Sena, Morris, and

---

[1] This case has been referred to the undersigned for full pre-trial purposes. (#18.)

Bouley escorted Fernandes to the medical unit, where Sena and John Murphy, a captain, allegedly made comments to staff discouraging them from taking Fernandes to a hospital. *Id*. ¶¶28-40. Eventually, Fernandes was taken to a hospital, but not before Sena warned him to "keep his mouth shut." *Id*. ¶¶42-44, 46.

Fernandes' grievance regarding the October 24, 2017 incident was rejected, and staff threatened him with discipline if he attempted to file another. He was, however, able to reach BCSO's Special Investigations Unit (SIU) on the phone. *Id*. ¶¶59-64. After an investigation, the SIU found that the officers' accounts of the incident did not match the evidence and that Sena, Morris, and Bouley lied. Sena and Morris, in particular, were found to have falsified reports. (#4, Exhibit A, at 12-14.)

Counsel for Hodgson and Souza represents that Sena and Morris were fired as a result of the incident, while Bouley and Murphy retired after the incident. (#50, opposition to first motion to compel, at 4.) Pursuant to a settlement agreement between the union and BCSO, Sena and Morris were ultimately rehired. *Id*.

The court previously allowed in part and denied in part a motion to dismiss filed by the BCSO, the Sheriff of Bristol County, Thomas M. Hodgson, and the Superintendent of the Bristol County House of Correction, Steven J. Souza. (#25, report and recommendation; #28, order adopting report and recommendation.) Specifically, Fernandes' claims against BCSO, Hodgson and Souza in their official capacities, and Hodgson and Souza in their individual capacities under the Massachusetts Civil Rights Act have been dismissed, while his claim – Count IV – that Hodgson and Souza, in their individual capacities, violated 42 U.S.C. § 1983 by failing to train or

supervise correctional officers on matters of excessive force remains. (#1 ¶¶151-157.)[2] In ruling that the supervisory liability claim had facial plausibility, the court viewed the complaint as a whole and allegations regarding interference with access to medical care, as well as threats and false statements, as relevant to the question of whether there was "'a known history of widespread abuse sufficient to alert [Hodgson and Souza] to ongoing violations.'" (#25 at 19 n.17, 21-22) (quoting *Guadalupe-Baéz v. Pesquera*, 819 F.3d 509, 515 (1st Cir. 2016)); *see generally* #25 at 16-24.

Fact discovery is scheduled to close on October 13, 2022. (#45, extension order.) Presently before the court are Fernandes' first and second motions to compel discovery from Hodgson and Souza. The second motion seeks an order compelling the production of documents that Hodgson and Souza have agreed to produce, together with an award of costs and attorney's fees. *See* #53.[3] Hodgson and Souza have not filed an opposition to this motion, and the time for doing so has expired. As set forth below, it is ALLOWED to the extent that it seeks production of the agreed-upon documents. The court defers ruling on Fernandes' request for an award of reasonable expenses.

---

[2] Fernandes also brings claims under § 1983 based on Sena's use of excessive force against Sena and Bouley (Count I); under § 1983 based on the failure to intervene in Sena's use of excessive force against Morris and Bouley (Count II); under § 1983 based on interference with access to medical care against Sena, Bouley, and Murphy (Count III); for assault and battery against Sena (Count VI); for intentional infliction of emotional distress against Sena, Morris, Bouley, and Murphy (Count VII); and, for the failure to intervene against Morris and Bouley (Count VIII). *See* #1. Sena is deceased. Morris, Bouley, and Murphy did not move to dismiss.

[3] *See also* #54, memorandum in support; #54-1, affidavit of counsel and exhibits in support.

The first motion, which is fully briefed, seeks an order compelling the production, or inspection, of documents that Hodgson and Souza have refused to produce. *See* #47.[4] For the reasons set forth below, it is ALLOWED in part and DENIED in part.

## II. Fed. R. Civ. P. 26.

Under Fed. R. Civ. P. 26(b)(1), a party may obtain discovery of any non-privileged matter that "is relevant to any party's claim or defense" and "proportional to the needs of the case," considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information and resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the discovery outweighs its likely benefit. *Id*. Generally, Rule 26 permits liberal discovery of relevant information. *Cumby v. Am. Med. Response, Inc.*, #18-cv-30050-MGM, 2019 WL 1118103, at *3 (D. Mass. Mar. 11, 2019). "Because discovery itself is designed to help define and clarify the issues," Rule 26 "must be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Id*. (citations and punctuation omitted).

Yet liberal discovery is not boundless discovery. The court must impose limits if it finds, for instance, that the information a party seeks is unreasonably cumulative or duplicative or that it can be obtained from another source that is more convenient or less burdensome or expensive. Fed. R. Civ. P. 26(b)(2)(C); *see Cumby*, 2019 WL 1118103, at *3.

---

[4] *See also* #48, memorandum in support; #49, affidavit of counsel and exhibits in support; #50; #55, reply in support; #56, affidavit of counsel and exhibits in support.

III. <u>Second Motion to Compel (#53)</u>.

In support of his two motions to compel, counsel for Fernandes have submitted three affidavits and more than a dozen exhibits, revealing this sequence: On December 23, 2021, Fernandes's counsel served substantively identical, first requests for production on counsel for Hodgson and Souza, *see* #49-2; #49-3, setting a deadline of 30 days. (#49 ¶7; #49-2 at 2, 11; #49-3 at 2, 11.) On January 24, 2022, Hodgson and Souza's counsel served substantively identical responses on Fernandes's counsel, *see* #49-5; #49-6. (#49 ¶9; #49-5 at 8; #49-6 at 9.)[5]

Counsel for Fernandes wrote to counsel for Hodgson and Souza on March 30, and on April 25, they held a meet-and-confer. (#49 ¶¶10-11; #49-7, March 30 letter.) Fernandes' counsel wrote to Hodgson and Souza's counsel on April 27, providing a summary of the agreements that the parties had reached and the disputes remaining. (#49 ¶12; #49-8, April 27 letter.) Hodgson and Souza's counsel wrote to Fernandes' counsel on May 4, confirming some parts of the summary but disagreeing with others. (#49 ¶13; #49-9, May 4 letter.)

In the May 4 letter, counsel agreed that Hodgson and Souza would produce the following documents, which were the subject of Fernandes' first requests for production and which are now the subject of his second motion to compel:

> 1. Disciplinary decisions following SIU investigations finding the use of excessive force, with the names of inmates redacted, *see* #53 ¶ii;[6]

---

[5] In their responses, Hodgson and Souza largely incorporated by reference BCSO's response, *see* #49-4, to Fernandes' first request for production in a parallel state court proceeding. *See* #49-5; #49-6. In his second motion, Fernandes moves to compel Hodgson and Souza to provide individual responses, *see* #53 ¶i. The court encourages, but does not order, Hodgson and Souza to provide individual responses expeditiously.

[6] *See* First Request for Production to Hodgson and Souza (RFP) No. 7, #49-2 at 7, #49-3 at 7 ("All documents and communications concerning complaints of excessive force. . .against any BCSO correctional officers and/or staff during the Relevant Time Period," i.e., January 1, 2011 to present); RFP No. 15, #49-2 at 8, #49-3 at 8 ("All documents and communications concerning all [SIU] investigations concerning complaints of abuse or improper conduct, including but not

2. Defendants' disciplinary records, *see id.* ¶iii;[7]

3. An email from Morris to Souza about the October 24, 2017 incident, *see id.* ¶iv;[8]

4. Fernandes' disciplinary records, *see id.* ¶v;[9] and,

5. Correspondence between Hodgson and the Attorney General regarding a 2018 letter, *see id.* ¶vi.[10]

The next day, Fernandes' counsel wrote to Hodgson and Souza's counsel, responding to the May 4 letter. (#49 ¶ 14; #49-10, May 5 letter.) On May 31, June 9, and June 16, Fernandes' counsel again wrote to Hodgson and Souza's counsel, requesting that the agreed-upon documents be produced. (#54-1 ¶¶5, 7, 9; #54-1, #54-2, May 31 email and letter; #54-3, June 9 email; #54-4,

---

limited to excessive force. . . against any BCSO employee or agent during the Relevant Time Period"); *see also* #49-9 at 3 ("We indicated that we would produce any disciplinary decisions where there were investigations that found the use of excessive force with the names of inmates redacted due to CORI and privacy concerns. . . .").

[7] *See* RFP No. 9, #49-2 at 7, #49-3 at 7 ("Complete personnel files, including but not limited to disciplinary referrals or records of" defendants); RFP No. 10, #49-2 at 7, #49-3 at 7 ("All documents concerning complaints of abuse or improper conduct, including but not limited to excessive force. . ." against defendants "since January 1, 2000"); *see* #49-9 at 3 ("We have produced the disciplinary records for the officers involved and requested those records for those named defendants whose records are in storage. We will produce the evaluations for those defendants, if they exist. Other portions of the personnel files are not relevant. . . .").

[8] RFP No. 11, #49-2 at 7, #49-3 at 7 ("All documents and communications concerning the Assault"); *see* #49-9 at 4 (". . . We will produce the email from Morris to the Superintendent concerning the event . . . .")

[9] RFP No. 13, #49-2 at 7, #49-3 at 7 ("All documents concerning Fernandes, including but not limited to all disciplinary records. . ."); *see* #49-9 at 4 ("We have agreed to produce Fernandes disciplinary record").

[10] RFP No. 25, #49-2 at 9, #49-3 at 9 ("All documents concerning Attorney General Maura Healey's June 14, 2018 letter to Secretary Daniel Bennett and any resulting investigations . . ."); *see* #49-9 at 4 (". . . We will produce the correspondence between the Sheriff and AG Healey relative to her June 14, 2018 letter").

June 16 email.) On June 28, Fernandes' counsel again wrote to Hodgson and Souza's counsel, requesting availability for another meet-and-confer. (#54-1 ¶11; #54-5, June 28 email.)

Before July 1, Hodgson and Souza's counsel did not respond to these communications and Hodgson and Souza did not produce the agreed-upon documents. (#54-1 ¶¶6, 8, 10, 12-14.) On July 1, Fernandes filed his second motion to compel. Since July 1, Hodgson and Souza have not filed an opposition to that motion or moved for an extension of the deadline, which expired on July 15. *See* L.R. 7.1(b)(2). Accordingly, Fernandes' second motion to compel is allowed to the extent that it seeks production of the agreed-upon documents, as set out above.

Where a motion to compel is granted, Fed. R. Civ. P. 37(a)(5)(A) requires that the court, after giving an opportunity to be heard, order the non-moving party, counsel, or both to pay the reasonable expenses incurred by the moving party on that motion, including attorneys' fees, unless the court determines that "nondisclosure, response, or objection was substantially justified," *see* Fed. R. Civ. P. 37(a)(5)(A)(ii), or that "other circumstances make an award of expenses unjust," *see* Fed. R. Civ. P. 37(a)(5)(A)(iii).[11] Hodgson and Souza have not been heard on this issue, so the court will defer ruling on Fernandes' request for payment. To pursue it further, Fernandes must, by August 15, 2022, submit an itemized statement of costs and attorney's fees. Within 10 days of service, Hodgson and Souza must show cause, in writing, as to why the court should not order payment.

---

[11] Fed. R. Civ. P. 37(a)(5)(A)(i) does not apply; Fernandes did not file his second motion to compel "before attempting in good faith to obtain the disclosure or discovery without court action." *Id.* Multiple communications were met with silence.

IV. <u>First Motion to Compel (#47)</u>.

Fernandes' first motion seeks an order compelling the production, or inspection, of documents that Hodgson and Souza refused to produce at the April 25 meet-and-confer and in the May 4 letter. The court divides the documents into the following categories:[12]

> 1. Communications regarding BCSO's training and orientation materials, cell search policies, and use of force policies, from January 1, 2011 to present, *see* #47 ¶3;[13]

> 2. Detainee grievances and associated documents against all BCSO employees alleging excessive force or interference with access to medical care, from January 1, 2011 to present, *see id.* ¶¶5, 6;[14]

> 3. Detainee grievances and associated documents against defendants alleging "abuse or improper conduct," from January 1, 2000 to present, *see id.* ¶8;[15]

> 4. Defendants' personnel files, as well as documents related to their firing, retirement, or rehiring, *see id.* ¶¶7, 10;[16] and,

---

[12] Except as discussed below, the documents were the subject of Fernandes' first requests for production.

[13] RFP No. 1, #49-2 at 6, #49-3 at 6 ("All documents and communications concerning BCSO training materials that relate to BCSO employee's interactions with Detainees including but not limited to the use of force and the provision of medical care and treatment, during the Relevant Time Period"); RFP No. 3, #49-2 at 6, #49-3 at 6 ("All documents and communications concerning the orientation materials for new [BCSO] correctional officers during the Relevant Time Period"); RFP No. 4, #49-2 at 6, #49-3 at 6 ("All documents and communications concerning [BCSO] training materials that relate to the use of force and the provision of medical care to Detainees during the Relevant Time Period"); RFP No. 5, #49-2 at 6, #49-3 at 6 ("All documents and communications concerning BCSO cell search policies during the Relevant Time Period"); RFP No. 6, #49-2 at 7, #49-3 at 7 ("All documents and communications concerning BCSO's use of force standards, policies, and procedures during the Relevant Time Period").

[14] RFP No. 7, #49-2 at 7, #49-3 at 7; RFP No. 8, #49-2 at 7, #49-3 at 7 ("All documents and communications concerning complaints of interference with access to medical care or treatment against any BCSO employee during the Relevant Time Period").

[15] RFP No. 10, #49-2 at 7, #49-3 at 7.

[16] RFP No. 9, #49-2 at 7, #49-2 at 7; RFP No. 20, #49-2 at 8, #49-3 at 8 ("All documents and communications concerning the termination and/or rehiring of any correctional officer named in

5. Audits and documents reflecting investigations into complaints of "abuse or improper conduct" at BCSO facilities, from January 1, 2011 to present, *see id*. ¶9.[17]

A. General Disputes.

1. Control.

A party may serve a request within the scope of Fed. R. Civ. P. 26(b)(1) to produce, or allow the requesting party to inspect, documents in the responding party's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1)(A). In the May 4 letter, Hodgson and Souza, through counsel, took the position that they need only produce, or allow Fernandes to inspect, BCSO documents that they "personally maintain." (#49-9 at 2.) Before the court, they offer no defense of that position, *see* #50, which is obviously incorrect. The standard is not whether Hodgson and Souza "personally maintain" BCSO documents. As it appears in Fed. R. Civ. P. 34(a)(1)(A), "control" means "the legal right, authority or ability to obtain documents on demand." *Mantha v. QuoteWizard.com, LLC*, #1:19-cv-12235-LTS, 2021 WL 981815, at *3 (D. Mass. Mar. 16, 2021) (citation and punctuation omitted). Such "control" may be established through the existence of a principal-agency relationship. *Id*. Courts have held that where, as here, prison officials are sued in their individual capacities but are employed by the department of correction, they have the ability to obtain department of correction documents on demand and "control" them. *Sublett v. Henson*, #5:16-cv-00184-TBR, 2018 WL 3939333, at *5 (W.D. Ky. Aug. 16, 2018) (quoting *Belden v.*

---

the Complaint"); RFP No. 24, #49-2 at 9, #49-3 at 9 ("All documents concerning any disciplinary action BCSO took against any Defendant for their role in the Assault").

[17] *See* RFP Nos. 16, #49-2 at 8, #49-3 at 8 ("All documents and communications concerning any investigation by any entity concerning complaints of abuse or improper conduct, including but not limited to excessive force, assault, battery, use of force, and interference with access to medical care or treatment against any BCSO employee or agent during the Relevant Time Period").

*Jordan*, #3:16-cv-P511-TBR, 2017 WL 3485006, at *1-2 (W.D. Ky. Aug. 14, 2017)); *see, e.g.*, *Mitchell v. Adams*, #CIV S-06-2321 GEB GGH P, 2009 WL 674348, at *9 (E.D. Cal. Mar. 6, 2009).

Thus, the court overrules any objection to production, or inspection of, BCSO documents on the ground that Hodgson and Souza do not "personally maintain" them. Of note, however, Fernandes has recently served a subpoena on BCSO. (#49 ¶16; #49-11, subpoena.) Because BCSO documents produced by Hodgson and Souza may be duplicative of those produced by BCSO itself, counsel are ordered to confer further.

### 2. Post-event evidence.

Fernandes alleges that Hodgson and Souza failed to train or supervise correctional officers on matters of excessive force and therefore he must prove "deliberate indifference" and "causation." *Justiniano v. Walker*, 986 F.3d 11, 20-21 (1st Cir. 2021). In brief, "deliberate indifference" requires proof of "(1) a grave risk of harm; (2) the [supervisor's] actual or constructive knowledge of that risk; and, (3) his failure to take easily available measures to address the risk." *Id.* (citation and punctuation omitted). A plaintiff may rely on proof of ". . . a known history of widespread abuse. . . ." *Id.* at 21 (citation and punctuation omitted).

Hodgson and Souza generally object to Fernandes' requests for production, or inspection, of documents post-dating October 24, 2017, unless related to the October 24 incident. (#50 at 5-6); *see also* #49-5 at 2; #49-6 at 3. They claim that

> [w]hat occurred after the date of the assault and even after the death of Sena can never be relevant as a causative factor as to why the incident alleged occurred and such requests are plainly frivolous and are obviously intended for some other agenda.

(#50 at 5.)

For legal support, Hodgson and Souza rely on Fed. R. Evid. 407, *see* #50 at 5-6, which provides that evidence of subsequent remedial measures is not admissible to prove, *inter alia*, culpable conduct, although it may be admissible for another purpose, such as impeachment. Fed. R. Evid. 407. Hodgson and Souza also claim, *see* #50 at 5-6, that Fernandes misinterprets the cases upon which he relies in support of his relevance argument, *see* #48 at 6-7.

First, Hodgson and Souza's repeated assertion that, to be discoverable, information must be "reasonably calculated" to lead to the discovery of admissible evidence, *see* #50 at 5, 6, 11, is wrong. In 2015, Fed. R. Civ. P. 26 was amended to delete the "reasonably calculated" phrase; since then, it has simply provided that information within the scope of discovery "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The Advisory Committee explained why the phrase was deleted:

> . . .The phrase has been used by some, incorrectly, to define the scope of discovery. As the Committee Note to the 2000 amendments observed, use of the "reasonably calculated" phrase to define the scope of discovery "might swallow any other limitation on the scope of discovery." The 2000 amendments sought to prevent such misuse by adding the word "Relevant" at the beginning of the sentence, making clear that "'relevant' means within the scope of discovery as defined in this subdivision ..." The "reasonably calculated" phrase has continued to create problems, however, and is removed by these amendments. It is replaced by the direct statement that "Information within this scope of discovery need not be admissible in evidence to be discoverable." Discovery of nonprivileged information not admissible in evidence remains available so long as it is otherwise within the scope of discovery.

Fed. R. Civ. P. 26 advisory committee's note to 2015 amendments; *see In re Bard IVC Filters Products Liability Litigation*, 317 F.R.D. 562, 563-564 (D. Ariz. 2016); *see also Abiomed Inc. v. Maquet Cardiovascular LLC*, #1:16-cv-10914-FDS, 2017 WL 11625640, at *3 n.5 (D. Mass. Oct. 6, 2017). Hodgson and Souza are free to file a motion *in limine* to exclude evidence of subsequent remedial measures. Fed. R. Evid. 407 does not justify their refusal to produce, or allow inspection of, documents within the scope of discovery under Fed. R. Civ. P. 26.

The pertinent question is whether documents post-dating October 24, 2017 are relevant and proportional to the needs of the case. In the abstract, the court finds that they may be relevant, which is sufficient for present purposes. The First Circuit has recognized that post-event evidence may be relevant where the plaintiff must prove, under *Monell v. Dept. of Soc. Servcs.*, 436 U.S. 658 (1978), and its progeny, that a city had a custom or policy of deliberate indifference to constitutional violations. Thus, in *Bordanaro v. McLeod*, 871 F.2d 1151 (1st Cir. 1989), the court held that the trial judge did not abuse his discretion in admitting evidence of the lack of proper investigation and failure to take strong disciplinary action against police officers in relation to the alleged constitutional violations underlying the suit, reasoning that post-event evidence "can shed some light on" what policies existed in a city previously. *Id*. at 1166-1167.

In *Foley v. City of Lowell, Mass.*, 948 F.2d 10 (1st Cir. 1991), the court rejected a narrow reading of *Bordanaro*, to apply only to later events that arise out of the underlying constitutional violations. *Id*. at 14 n.3. It articulated this standard:

> Contrary to the City's exhortation that the date an incident occurs marks the outside date for evidence-gathering on such an issue, we think that actions taken subsequent to an event are admissible if, and to the extent that, they provide reliable insight into the policy in force at the time of the incident. . . . We do not mean to imply that all post-event evidence is automatically admissible in a section 1983 "custom or policy" case. Rather, the question that must be asked when post-event evidence is proffered is whether the evidence sufficiently relates to the central occurrence.

*Id*. at 14 (citations omitted). In that case, the trial judge admitted testimony of another arrestee, Finnegan, who was beaten by a police officer, Lamothe, about six months after plaintiff, Foley, was arrested and beaten by Lamothe. 948 F.2d at 13. The court found no abuse of discretion, *id*. at 14-15; given the similarities with, and close temporal proximity to, the Foley incident, the

Finnegan incident "was competent, if indirect, evidence of a preexisting municipal policy of indifference." *Id.*[18]

*Bordanaro* and *Foley* bind this court, and their reasoning clearly applies to Fernandes' supervisory liability claim. *See Quinn v. US Prisoner Transport, Inc.*, #2:18-cv-00149-DBH, 2019 WL 257980, at *8 n.5 (D. Me. Jan. 17, 2019) (municipal and supervisory liability claims share common legal framework). Logically, incidents after October 24, 2017 could not directly put Hodgson and Souza on notice that Sena, Morris, Bouley, and Murphy would violate Fernandes' constitutional rights, or directly cause them to. Yet incidents after October 24 certainly have potential circumstantial value in proving Hodgson and Souza's state of mind. For instance, evidence that Hodgson and Souza condoned the use of excessive force after October 24 might lead a reasonable jury to find that they condoned the use of excessive force before October 24 and were thus deliberately indifferent to putative violations of Fernandes' constitutional rights on October 24. Moreover, if a reasonable jury might find that Hodgson and Souza had a preexisting policy of condoning the use of excessive force from evidence of a subsequent policy to same effect, then a reasonable jury might also find that Sena, Morris, Bouley, and Murphy, aware of the preexisting

---

[18] Numerous decisions recognize the relevance of post-event evidence to municipal liability. *See Abdur-Rahim v. City of Columbus*, #2:17-cv-601, 2019 WL 1873222, at *2-3 (S.D. Ohio April 26, 2019) ("[T]he clear majority of case law supports the Magistrate Judge's conclusion that subsequent incidents could be probative of what policies, practices, or accepted customs existed [at] the time of the incident at issue, which would be relevant to Plaintiffs' *Monell* claims") (collecting decisions of nine Courts of Appeals, including First Circuit). The Third Circuit's decision in *Beck v. City of Pittsburgh*, 89 F.3d 966 (3d Cir. 1996), is among them. Hodgson and Souza, not Fernandes, misinterpret that decision. Contrary to defendants' claim, *see* #50 at 6, the *Beck* court determined that the subsequent complaint of similar misconduct by the police officer "may have evidentiary value for a jury's consideration whether the City and policymakers had a pattern of tacitly approving the use of excessive force." *Beck*, 89 F.3d at 972.

policy, believed that they could act with impunity toward Fernandes' constitutional rights and therefore did.[19]

To be clear, the court is not holding that post-event evidence is admissible at trial or sufficient to prove supervisory liability. It merely construes Fed. R. Civ. P. 26(b)(1) broadly and, in the abstract, finds that such evidence may be relevant, thereby overruling Hodgson and Souza's general objection.

Fernandes offered to narrow the time frame of some of his requests in an effort to alleviate Hodgson and Souza's overbreadth concerns. (#49-7 at 5.) Counsel are thus ordered to confer further.

### 3. Initial disclosure.

Hodgson and Souza argue that Fernandes should be barred from moving to compel because he has made "no" initial disclosure. (#50 at 12-13.) They have not submitted an affidavit of counsel or exhibits. Nor have they cited any supporting legal authority. *See* #50.

In reply, Fernandes has submitted an affidavit of counsel and exhibits, which show that his counsel served an initial disclosure on counsel for Hodgson and Souza on November 3, 2021. (#56 ¶¶5-6; #56-1, certificate of service; #56-2, email.) Thus, Hodgson and Souza's assertion that Fernandes made "no" initial disclosure appears untrue.

Review of Fernandes' November 3 initial disclosure does, however, confirm that he intentionally did not provide a computation of damages as required by Fed. R. Civ. P.

---

[19] These are the "subtler inference[s]" upon which the plaintiff relied in *Hagopian v. City of Newport*, C.A. No. 18-283 WES, 2021 WL 4742701, at *5 (D. R.I. Oct. 12, 2021). Again, Hodgson and Souza, not Fernandes, misinterpret this decision. Judge Smith did not find that the subsequent complaints of similar misconduct by the police officer "were not relevant." (#50 at 6.) On summary judgment, he found that the subsequent complaints were insufficient to create a genuine issue of material fact. *Id*. at *5-6.

26(a)(1)(A)(iii). (#56-1 at 7; #56-2 at 8.) Yet the purported deficiency does not justify Hodgson and Souza's refusal to produce, or allow inspection of, documents. *Tropix, Inc. v. Lyon & Lyon*, 169 F.R.D. 3, 4 (D. Mass. 1996) ("A complaint that the other party has not fully complied with the automatic disclosure provisions is not ground for a unilateral decision not to respond to the other party's discovery requests.") If Hodgson and Souza believed his November 3 initial disclosure was lacking, it was incumbent upon them to bring the purported deficiency to Fernandes' attention and, when unable to resolve the issue, to the court's, through a motion to compel. *Id*. at 4-5. Hodgson and Souza have not filed a motion to compel, and Fernandes is not barred from pursuing his.

## B. Specific Requests.

### 1. Orientation and training materials; cell search and use of force policies.[20]

Hodgson and Souza understand Fernandes to be seeking "training records" for all BCSO correctional officers, from January 1, 2011 to present. (#50 at 7-8.) Fernandes denies that is so, explaining that his request is for "training materials." (#55 at 4-5.) Neither party identifies the difference, if any, between training "records" and "materials," but the court presumes that the latter might include documents that are given to correctional officers who are undergoing training, like lesson plans and curricula, while the former might include documents reflecting the training that

---

[20] While Fernandes' request for production of "orientation" materials was not, *see* RFP No. 3, #49-2 at 6, #49-3 at 6, his request for "training" materials was limited by topic, i.e. to those relating to BCSO employees' interactions with detainees and to the use of force and provision of medical care, *see* RFP Nos. 1, 4, #49-2 at 6, #49-3 at 6. Therefore, as to "training" materials, the court's order is limited by topic.

Fernandes moves to compel their production, *see* #47 ¶4, but does not point to a previous, formal request for "lesson plans" and "curriculum" specifically. *See* #48 at 8-9. The court thus orders production of "lesson plans" and "curriculum" to the extent that the documents are "orientation materials," as encompassed by RFP No. 3, or "training materials," as encompassed by RFP Nos. 1 and 4.

each correctional officer underwent, such as performance evaluations. The court only addresses the latter, in light of Fernandes' denial.

The parties' primary dispute seems to concern Fernandes' request for "communications" about orientation and training materials and cell search and use of force policies or regulations, which they appear to agree would include "edits" to the materials and policies or regulations and "drafts" of same. (#50 at 8; #55 at 3.) Hodgson and Souza argue that edits and drafts are not relevant because "[t]he sole issue pertinent to what happened to the Plaintiff on October 24, 2017 is what trainings the Defendants who were involved in any way with the alleged assault and aftermath underwent" and "officers only are privy to and are trained from the finalized regulations." (#50 at 8.) Fernandes argues that Hodgson and Souza have waived their relevancy objection and, regardless, edits and drafts are probative of their state of mind. (#48 at 9-10; #55 at 3.)

The court does not need to reach the issue of waiver[21] because Hodgson and Souza's relevancy objection is unconvincing.[22] The "sole issue" is not "what training" Sena, Morris, Bouley, and Murphy "underwent." Fernandes must prove that Hodgson and Souza were deliberately indifferent, and could possibly do so through, for instance, proof that Hodgson and

---

[21] However, Fernandes' argument is well taken. As noted, in their responses to his first requests for production here, Hodgson and Souza mostly incorporated by reference BCSO's responses to his first request for production in state court. *See* #49-5; #49-6. There, the closest BCSO came to articulating a relevancy objection was the assertion that RFP No. 1 is "overbroad." (#49-4 at 2-3.) Under the Local Rules, if an objection is made to a request for production, it must state all grounds, with specificity, and grounds that are not timely stated are waived. L.R. 34.1(c)(1); *see Krewson v. City of Quincy*, 120 F.R.D. 6, 7 (D. Mass. 1988).

[22] In their opposition, Hodgson and Souza add that Fernandes' request for edits and drafts is "overbroad" and "burdensome." (#50 at 8.) But in articulating those objections, they simply restate their relevancy objection. *Id.* Hodgson and Souza have not argued that edits and drafts are privileged. *See* #50.

Souza knew that correctional officers trained under standards in 2016 were using force against detainees unnecessarily; discussed revisions to the 2016 standards; but, decided not to implement them, leaving deficient standards in place. Thus, "communications" regarding orientation and training materials and cell search and use of force policies or regulations, including "edits" and "drafts," may be relevant. *See, e.g., Fourhorn v. City and County of Denver*, #08-cv-01693-MSK-KLM, 2009 WL 2407569, at *3, 4 (D. Col. Aug. 3, 2009) (in rejecting claim that "intermediate recommendations" of internal affairs bureau during investigation of plaintiffs' arrests were protected under deliberate process privilege, identifying relevance: "Discussions, analyses and recommendations about how to handle mistaken identity arrests, the seriousness attributed to such occurrences by City officials, and whether discussions were held about current policies as a sufficient mechanism to deter future arrests or whether new policies were contemplated and rejected are relevant to the issue of Defendant Denver's liability, if any"); *Price v. County of San Diego*, 165 F.R.D. 614, 619-620 (S.D. Cal. 1996) (rejecting claim based on self-critical analysis privilege; documents reflecting process by which county, after city's report on custody deaths, addressed possible suffocation resulting from arrestees being hogtied "directly" relevant to deliberate indifference).

2. <u>Specific grievances, all BCSO employees.</u>[23]

Hodgson and Souza proffer that BCSO "is endeavoring to find those cases of alleged excessive force that occurred between January 1, 2011 and October 24, 2017." (#50 at 9.) As set out above, their general objection to incidents post-dating October 24, 2017 is overruled.

---

[23] Hodgson and Souza seem to believe that Fernandes is asking to inspect all grievances against all BSCO employees. (#50 at 10.) He is not. He is asking to inspect specific grievances against all BSCO employees, i.e. those alleging excessive force and interference with access to medical care. (#47 ¶¶5, 6.)

Hodgson and Souza argue that Fernandes' request to inspect detainee grievances and associated documents, from January 1, 2011 to present, alleging interference with access to medical care implicates the Health Insurance Portability and Accountability Act (HIPAA) and requires the production of Criminal Offender Record (CORI) and other private information. (#50 at 8-9, 10.) The party seeking discovery over objection has the initial burden of demonstrating relevance. *Aronstein v. Mass. Mut. Life Ins. Co.*, #15-cv-12864-MGM, 2017 WL 2818993, at *2 (D. Mass. June 29, 2017). That burden is not onerous. *Id*. Once the possibility of relevance is shown, the burden shifts to the objecting party to show that the discovery is improper. *Id*.; *see also Craig v. Town of Hudson*, #20-cv-11380-ADB, 2021 WL 1601578, at *1-2 (D. Mass. April 23, 2021). Detainee grievances and associated documents, from January 1, 2011 to present, alleging interference with access to medical care may be relevant. The court has already found that allegations that Sena, Bouley, and Murphy interfered with Fernandes' access to medical care on October 24, 2017 supported the claim that Hodgson and Souza were deliberately indifferent. *See generally* #25 at 16-24. Evidence that other BCSO employees interfered with other detainees' access to medical care on other dates would also support that claim.

The burden shifts to Hodgson and Souza to show that the discovery is improper. Their unsupported assertions regarding HIPAA, CORI, and other privacy concerns fall well short of meeting it. HIPPA provisions "do not create a privilege against production or admission of evidence; they merely create a procedure for obtaining protected medical records in litigation." *Reed v. Wexford Health Sources, Inc.*, #20-v-01139-SPM, 2021 WL 5578076, at *2 (S.D. Ill. Oct. 19, 2021) (citing *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 925-926 (7th Cir. 2004)); *see Polk v. Swift*, 339 F.R.D. 189 (D. Wy. 2021). Likewise, CORI statutes and regulations do not create a privilege that trumps discovery obligations. *Harden v. Boston Scientific Corp.*, No. 15-cv-11503-

MLW, 2017 WL 1396009, at *1-2 & n.1 (D. Mass. April 18, 2017); *Piccone v. McClain*, #09-cv-30146-MLW, 2012 WL 1109252, *3 (D. Mass. Mar. 30, 2012). The parties have entered a protective order. (#39.) Hodgson and Souza do not argue that it is deficient. *See* #50. They are welcome to propose amendments or to confer with Fernandes' counsel regarding appropriate redactions. *See Lewis v. Tazewell County*, #10-1268, 2011 WL 2462557, at *3 (C.D. Ill. June 17, 2011) (overruling privacy objection; defendants could propose amendments to protective order); *cf. Reed*, 2021 WL 5578076, at *2, 4 (vacating existing HIPAA qualified protective order addressing plaintiff's medical information and granting motion for entry of new order addressing third-party inmates' medical information).

A final point must be made. Hodgson and Souza suggest that they have no obligation as to access-to-medical-care documents "until and unless" Fernandes makes a "good faith," non-"frivolous" offer that he was harmed by the interference with his. (#50 at 9.) The court has denied their motion to dismiss Count IV, and that is simply not how this works. To flesh out his claim, Fernandes can seek information that bears on, or that reasonably could lead to other information that could bear on, any issue that is or may be in the case. *Cumby*, 2019 WL 1118103, at *3. To challenge its merits, Hodgson and Souza can move for summary judgment. They cannot cut off discovery at its outset.

In sum, Hodgson and Souza must produce, or allow inspection of, the detainee grievances and associated documents alleging excessive force and interference with access to medical care against all BCSO employees, subject to further conference regarding time frame. Where Hodgson and Souza seem to be claiming that the search for detainee grievances and associated documents alleging anything other than excessive force is too "tedious," *see* #50 at 9, counsel must also confer further regarding that process.

3. <u>All grievances, defendants</u>.

Fernandes asks to inspect grievances and associated documents, from January 1, 2000 to present, against defendants alleging "abuse or improper conduct." In their opposition, Hodgson and Souza object to "abuse or improper conduct" as "ambiguous" and "overbroad." (#50 at 9.) They did not raise this objection in responding to Fernandes' first requests for production. *See* #49-4 at 4; #49-5 at 4; #49-6 at 4. It is therefore waived. L.R. 34.1(c)(1).

Regardless, the objection is meritless. In the context of this case, "abuse or improper conduct" may be read to include, for example, assault, battery, use of force, failure to intervene, purposeful delay in, or denial of, access to medical care, threats, falsifying reports, and, lying to investigators. Moreover, Fernandes is asking to inspect detainee grievances and associated documents alleging "abuse or improper conduct" against six people. This is presumably a limited universe of documents.

Hodgson and Souza's objections are overruled. If BCSO has not produced them already, the court orders them to either produce, or allow the inspection of, detainee grievances and associated documents, from January 1, 2000 to present, against defendants alleging abuse or improper conduct.

4. <u>Personnel files and documents related to defendants' firing, retirement, or rehiring.</u>

Hodgson and Souza appear only to object to Fernandes' request for production or inspection of documents that would reflect the negotiations between the union and BCSO that resulted in Sena and Morris being rehired. (#50 at 10-11.)[24] As legal support, they cite Fed. R.

---

[24] Because it lacks merit, the court does address whether Hodgson and Souza waived this objection. However, Fernandes' argument, *see* #48 at 20, is well taken, again. In their responses, BCSO and, by extension, Hodgson and Souza did not object to RFP Nos. 20 and 24, on any ground. *See* #49-4 at 6, 8; #49-5 at 5, 7; #49-6 at 5, 7.

Evid. 408, *see* #50 at 11, which addresses the admissibility, not the discoverability, of promises or offers in compromising, or in attempting to compromise, a claim. As discussed above, Fed. R. Civ. P. 26 does not require that information be reasonably calculated to lead to the discovery of admissible evidence. The pertinent question is whether it is relevant and proportional to the needs of the case. *See Opio v. Whole Foods Market Group, Inc.*, #2:21-cv-00187-NT, 2022 WL 227114, *1 (D. Me. Jan. 26, 2022) (rejecting claim that public policy of encouraging settlement as set forth in Fed. R. Evid. 408 "requires a heightened level of scrutiny when settlement documents are requested in discovery. Federal Rule of Civil Procedure 26 governs the scope of discovery"); *Begley v. Windsor Surry Co.*, #17-cv-317-LM, 2020 WL 5036105, at *7 n.13 (D. N.H. July 6, 2020) ("While documents involving settlement may ultimately not be admissible at trial, they are discoverable if they are relevant and not privileged"); *ACI Worldwide Corp. v. KeyBank Nat'l Assoc.*, #17-cv-10662-IT, 2018 WL 4510266, at *2 (D. Mass. July 31, 2018) ("the core test remains relevancy"). Hodgson and Souza make no argument that the negotiations are irrelevant. The court agrees with Fernandes, *see* #48 at 21, that it is hard to imagine documents more relevant to Hodgson and Souza's deliberate indifference than documents reflecting the process of rehiring Sena and Morris. Hodgson and Souza also make no argument that the negotiations are disproportionate to the needs of the case. They are not.

In state court, BCSO objected to Fernandes' request for production of defendants' complete personnel files as "overbroad" and necessitating disclosure of irrelevant, "personal information." (#49-4 at 4.) In their opposition here, Hodgson and Souza do not raise that objection. *See* #50. It is therefore abandoned. *See Dept. of Toxic Substances v. Rossi*, #20-cv-01049-VC (RMI), 2022 WL 19355, at *2 (N.D. Cal. Jan. 3, 2022) (". . . '[w]hen ruling upon a motion to compel, the court generally considers those objections which have been timely asserted and relied upon <u>*in response*</u>

*to the motion* . . . [and] generally deems objections raised but not relied upon in response to the motion as abandoned. It deems objections not initially raised as waived.'. . ." (emphasis in original) (quoting *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999)); *see LaBrecque ex rel. T.N. v. School Administrative Dist. No. 57*, 463 F. Supp. 2d 88, 96 (D. Me. 2006).

Anyway, there is authority in this circuit to support the conclusion that personnel files of the subordinate officers who allegedly violated the plaintiff's constitutional rights, as well as the superior officers who allegedly failed to train or supervise, may be relevant and discoverable. *See Jouvalakas v. Minnehan*, #03-cv-12187-RWZ, 2005 WL 1750379, at *1 (D. Mass. July 26, 2005); *Green v. Fulton*, 157 F.R.D. 136, 141 (D. Mass. 1994); *see also Carmona v. Toledo*, 215 F.3d 124, 135 (1st Cir. 2000). Again, the parties have entered a protective order.  Hodgson and Souza do not explain how it fails to address "personal information" concerns. They are welcome to propose amendments and confer with Fernandes' counsel regarding appropriate redactions.

Hodgson and Souza's exclusive objection is overruled. If not already produced by BCSO, they must produce defendants' personnel files. In addition, they must conduct a reasonable search for, and produce, non-privileged documents related to defendants' firing, retirement, or rehiring.

5. <u>Audits</u>.[25]

In their opposition, Hodgson and Souza articulate just one objection to this final category of documents – incidents post-dating October 24, 2017 are irrelevant. (#50 at 10.) For the reasons set out above, that objection is overruled.

V. <u>Conclusion</u>.

Fernandes' second motion to compel (#53) is ALLOWED to the extent that it seeks production of the agreed-upon documents. The court defers ruling on Fernandes' request for an award of reasonable expenses.

Fernandes' first motion to compel (#47) is ALLOWED in part and DENIED in part.


July 25, 2021                                         /s/ M. PAGE KELLEY
                                                     M. Page Kelley
                                                     Chief United States Magistrate Judge

---

[25] In addition to documents related to the 2018 letter from the Attorney General, Fernandes moves to compel production of documents related to a 2020 incident at the Bristol County House of Correction. (#47 ¶9.) Unlike 2018 letter documents, *see* RFP No. 25, #49-2 at 9, #49-3 at 9, 2020 incident documents were not the subject of a previous, formal request for production. *See* #49-2, #49-3. The court thus orders production of 2020 incident documents only to the extent they are encompassed by RFP No. 16, i.e., for "[a]ll documents and communications concerning any investigation by any entity concerning complaints of abuse or improper conduct. . . ." (#49-2 at 8, #49-3 at 8.)